No. 23-1029

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

UNITED STATES,

Appellee

v.

DAMIAN CORTEZ,

Defendant-Appellant.

On Appeal from the United States District Court for the District of Massachusetts in Case No. 1:20-cr-10197-LTS-5, Judge Leo T. Sorokin

## DEFENDANT-APPELLANT'S REPLY BRIEF

Sara E. Silva (BBO No. 645293)
SILVA KETTLEWELL & PIGNATELLI LLP
10 High Street, Suite 505
Boston, MA 02110
(617) 351-9093
sara.silva@skpboston.com

*Attorney for Defendant-Appellant Damian Cortez*

May 24, 2024

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES……………………………………………….......................ii

ARGUMENT…………………………………………………………………….1

   I.     The Constitutionally Required Nexus to the Attleboro Apartment Was Not Satisfied Under the Unique Facts of this Case. ……………………..1

   II.    The District Court Clearly Erred in Denying Trial Counsel's Request for a *Franks* Hearing……………………………………….………………...9

        A. Trial Counsel's Inclusion of the Government's Position in His *Franks* Affidavit Did Not "Invite" the District Court to Accept the Facts Embedded Therein Without Taking Evidence………………………..9

        B. The Text Messages Described by Detective Ball Did Not Exist …...12

        C. Without the Purported Arson and Text Messages, There Was Insufficient Probable Cause to Believe that Mr. Cortez Was a Member of Any NOB-Related Conspiracy………………………….…………..15

   III.   The Good Faith Exception Does Not Apply Here………………………...18

CONCLUSION……………………………………………………………………...19

CERTIFICATE OF COMPLIANCE……………………………………………......20

CERTIFICATE OF SERVICE…………………………………………………......21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beck v. Ohio*, 379 U.S. 89 (1964)……………………………………….......1,4

*Brinegar v. U.S.*, 338 U.S. 160 (1949)………………………………….…..1,4

*Franks v. Delaware*, 438 U.S. 154 (1978)………………………………...11

*Henry v. U.S.*, 361 U.S. 98 (1959) …………………………………….......1

*Malley v. Briggs*, 475 U.S. 335 (1985)………………………………….…19

*Peet v. City of Detroit*, 502 F.3d 557 (6th Cir. 2007)……………………….7

*United States v. Aguirre*, 839 F.2d 854 (1st Cir. 1988)……...........................4,8

*United States v. Cordero-Rosario*, 786 F.3d 64 (1st Cir. 2015)……………………5

*United States v. Fuccillo*, 808 F.2d 173 (1st Cir. 1987)………………………..19

*United States v. Lopes*, 578 F. Supp. 3d 158 (D. Mass. 2021)………………...16,19

*United States v. McMurtrey*, 704 F.3d 502 (7th Cir. 2013)……………………12,14

*United States v. Mendoza*, 2017 WL 3262111 (D. Nev. May 10, 2017)………….10

*United States v. Moon*, 802 F.3d 135 (1st Cir. 2015)………………………..13,14

*United States v. Ruiz-Valle*, 68 F.4th 741 (1st Cir. 2023)………………………11

*United States v. Roman*, 942 F.3d 43 (1st Cir. 2019)……………………….......17

*United States v. Schaefer*, 87 F.3d 562 (1st Cir. 1996)……………………….15

*United States v. Serrano-Delgado*, 29 F.4th 16 (1st Cir. 2022)……………………11

*United States v. Southard*, 700 F.2d 1 (1st Cir. 1983)………………………….14

*United States v. Vigeant*, 176 F.3d 565 (1st Cir. 1999)………………………..8,19

*United States v. Williams*, 2022 WL 2526192 (D. Ariz. April 11, 2022)………...10

**Statutes**

18 U.S.C. s 1962(d)…………………………………………………………………..17

**Rules**

Fed. R. Crim. P. 16(a)(1)(B)(i)...……………………………………………………13

L.R., D. Mass. 116.1(c)(1)(A)…….………………………………………...…13

# ARGUMENT

## I. The Constitutionally Required Nexus to the Attleboro Apartment Was Not Satisfied Under the Unique Facts of this Case.

Probable cause exists when the police have "reasonably trustworthy information" supporting the relevant conclusion. *Beck v. Ohio*, 379 U.S. 89, 91 (1964) (citing *Brinegar v. U.S.*, 338 U.S. 160, 175-76 (1949) and *Henry v. U.S.*, 361 U.S. 98, 102 (1959)). The conclusion challenged here is the district court's finding that Boston Police Detective Brian Ball's affidavit provided probable cause to believe that Defendant-Appellant Damian Cortez was residing at an apartment in Attleboro, Massachusetts in June 2020 such that there was a constitutional nexus between that apartment and the evidence purportedly sought, notwithstanding the fact that, less than five weeks before, Detective Ball asserted under oath that Mr. Cortez lived at "his home" in Randolph, Massachusetts.

The government's Opposition suggests that these contradictory assertions are not material to the probable cause analysis. In so doing, however, the government misunderstands both the chronology of the events and how those events seriously undermined the trustworthiness of Detective Ball's affidavit and, thus, the probable cause finding.

The following material record facts were before the district court when it declined to suppress the fruits of the Attleboro apartment search:

First, the investigation at issue had been ongoing since the Summer of 2019. [J.A. 49].

Second, on May 6, 2020, after investigating for nearly a year, Detective Ball submitted an affidavit in support of a warrant to search two cell phones, at least one of which belonged to Mr. Cortez. [J.A. 82-83]. In that affidavit, Detective Ball swore under oath that Mr. Cortez's "home" was at 211 North Street in Randolph, Massachusetts, a conclusion that was based on surveillance conducted via a pole camera that had been placed near that and "numerous" law enforcement observations of Mr. Cortez at that location throughout the course of the investigation. [J.A. 86-87].

Third, less than five weeks later, on June 11, 2020, Detective Ball submitted an affidavit in support of a warrant to search 19 Falmouth Street, Apartment 3, in Attleboro, Massachusetts. [J.A. 47-70]. In that affidavit, Detective Ball swore under oath that, "based on the investigation," Mr. Cortez resided at the Attleboro apartment. [J.A. 48]. Detective Ball asserted that "[b]ased on the investigation," the person who rented the Attleboro apartment, Anthony Depina, was an NOB member and a close friend of Mr. Cortez, and that Mr. Depina allowed Mr. Cortez to stay there. *Id.* But unlike in the May affidavit, Detective Ball did not provide any factual foundation for those assertions. Moreover, Detective Ball did not explain or even acknowledge that, five weeks earlier, he had sworn under oath that

2

Mr. Cortez resided in Randolph based on months of pole camera monitoring and law enforcement observations of Mr. Cortez's movements. *Id.*

Fourth, on June 15, 2020, the government filed a sealed complaint in this case and sought arrest warrants against Mr. Cortez and fifteen other people. [J.A. 2-3].

Fifth, on the following day, June 16, 2020, law enforcement executed the search warrant on the Attleboro apartment. [G. App. 94-95].

The Opposition does not grapple with the significance of this chronology at all. Instead, at page 39, the Opposition lists four bullet points that purportedly "set out in detail" the basis for the probable cause determination that Mr. Cortez resided in Attleboro. [Opposition at 39.] Those four sets of facts consist of (1) Detective Ball's conclusory assertion that Mr. Depina "was allowing Mr. Cortez to stay at the Attleboro apartment," an assertion based solely on "the investigation;" (2) the fact that the apartment's mailbox was labeled "3 De Pina;" (3) Detective Ball's assertion that GPS data reflected Mr. Cortez's cell phone "was regularly located at the Attleboro apartment," although he provided no information about when (i.e., during the day vs at night), how frequently, or for how long, all of which was available in the GPS data he referenced; and (4) assertions that investigators had purportedly "observed" Mr. Cortez or his car there "on numerous occasions,"

although Mr. Cortez was seen there only once in the prior two weeks, and his car was seen there only once in the prior week. [Opposition at 39].

The representation that Mr. Cortez "resided at" the Attleboro apartment was the sole basis justifying law enforcement's request for a warrant to search that property. [J.A. 55-56]. Detective Ball's affidavit specifically and exclusively justified the evidence sought in the warrant by reference to the types of materials that "individuals typically possess in their residences" and the "various types of gang-related materials" that "members and associates of violent street gangs, such as NOB, maintain . . . at their residence." *Id.* (emphases added). For these reasons, in the absence of "reasonably trustworthy information" that Mr. Cortez resided at the Attleboro apartment, the warrant could not satisfy the Fourth Amendment. *Beck*, 379 U.S. at 91; *United States v. Aguirre*, 839 F.2d 854, 857-58 (1st Cir. 1988) (affidavit must establish probable cause "in some trustworthy fashion").

The four facts relied on in the Opposition, at most, established that Mr. Cortez regularly visited the apartment, but not that he was living there. Indeed, it is difficult to understand how seeing a person at a particular location once in a two-week period could possibly cause a reasonable and prudent individual to conclude the person lived there – particularly when that person had a different known residence. *Cf. Brinegar v. United States*, 338 U.S. 160, 175 (1949). The same is

true about Mr. Cortez's car being seen at the location only once in the week prior to the warrant application; both of those facts <u>undermine</u> the conclusion that the Attleboro apartment was his residence.   The GPS data referenced by Detective Ball added nothing because regularly going to a place does not equate with living there.  And the assertion described as "particularly salient" in the Opposition at p. 41 – that Mr. Depina allowed Mr. Cortez to stay at the Attleboro apartment – was not supported by <u>*any*</u> source other than a vague reference to "the investigation," [J.A. 48], rendering it insufficient to establish probable cause.  *See United States v. Cordero-Rosario*, 786 F.3d 64, 70-71 (1st Cir. 2015) (police affidavit that pornographic material would be found on a computer based on "the investigation carried out by me in this case and in accordance with the interview of the injured party P.C.M., minor" was "conclusory as to all the key points concerning nexus" and thus "plainly not sufficient to establish the necessary probable case").

The absence of factual support on this point is particularly telling under the unique circumstances of this case.  The Opposition does not dispute that law enforcement possessed a wealth of information about Mr. Cortez's movements at the time Detective Ball submitted his affidavit – not only had law enforcement been monitoring the home in Randolph with a pole camera and police surveillance for months, but they had also searched his cell phone, including the photos, messages, and GPS data, to learn Mr. Cortez's movements generally and in

specific relation to the Attleboro apartment. [Opposition at 40]. Yet Detective Ball did not offer the kind of information that was clearly available to him and would have simply and easily supported a finding that Mr. Cortez was residing in Attleboro if it existed – for example, GPS data showing that he stayed there overnight. Detective Ball did not assert that Mr. Cortez had spent even one night at the Attleboro apartment, or describe when he was there (first thing in the morning vs. the middle of the day vs. overnight), or how long he stayed (5 minutes vs 5 hours vs 5 days), or even whether he was still going to his home in Randolph at night. The failure to assert any such facts (despite having the relevant data in hand) strongly suggests that the data did <u>not</u> support probable cause to believe Mr. Cortez was residing at the Attleboro apartment, further undermining the trustworthiness and reliability of the four assertions on which the Opposition relies.

The reliability of Detective Ball's assertions is also severely undermined by the representation he made under oath less than five weeks before that Mr. Cortez was living in Randolph, as well as the solid factual basis he offered for the earlier conclusion (months of pole camera and law enforcement observations) and the absence of any explanation whatsoever for the sudden and contradictory shift. The Opposition asserts that these facts do "not undermine the finding of probable cause" because "as investigations progress, the strength of evidence against a suspect may change." [Opposition at 39-40]. While that is certainly true, it does

not typically happen at the very end of a year-long investigation, and certainly not under the circumstances here, where police had actual and specific data about the defendant's movements but did not provide it to the magistrate judge.

The case cited in the Opposition, *Peet v. City of Detroit*, 502 F.3d 557, 565 (6th Cir. 2007) actually supports Mr. Cortez's point here. In *Peet*, police based their probable cause determination on the personal knowledge of eye witnesses who did not "materially disagree" with each other, and documented statements that contained only minor differences which "did not undermine the probable cause" determination. *Peet*, 502 F.3d at 564. That situation is far different from this one, where the same affiant made directly contradictory statements about a fact critical to the probable cause determination less than five weeks apart, without any explanation or acknowledgment. Indeed, *Peet* affirmatively rejected the notion suggested by the Opposition – that law enforcement should abandon the weight of the evidence they have developed over the course of their investigation whenever they receive potentially contradictory information. *Id.* at 565 (police are not required "to re-evaluate probable cause constantly with every additional witness interview and scrap of evidence collected").

Here, the Attleboro apartment warrant did not just reflect a dramatic and unexplained shift in law enforcement's understanding of where Mr. Cortez was residing, it did so a mere ***four days*** before the government filed the criminal

complaint and obtained arrest warrants in this case for Mr. Cortez and his co-defendants – in fact, the warrant was not even executed until the day <u>after</u> that complaint was filed.  While it is true that police officers routinely build on what they learn over the course of a lengthy investigation, an abrupt about-face at the very end is highly questionable – and particularly here, where Detective Ball's affidavit did not even acknowledge the shift, much less explain it.  The timing of Detective Ball's sudden change-up with regard to Mr. Cortez's residence at the very end of a lengthy investigation suggests a final effort to develop evidence against Mr. Cortez, further undermining his affidavit's reliability.  *Accord United States v. Vigeant*, 176 F.3d 565, 574 n.17 (1st Cir. 1999).

Under these unique circumstances, both the magistrate judge and the district court erred as a matter of law in finding that the warrant to search the Attleboro apartment "demonstrates in some trustworthy fashion . . . a sound reason to believe that" Mr. Cortez resided at the Attleboro apartment such that a search of that apartment might turn up indicia of his participation in an NOB-related conspiracy. *United States v. Aguirre*, 839 F.2d 854, 857-58 (1st Cir. 1988); *see also* Appellant's Opening Brief at 30-34.  For these reasons, this Court should reverse the district court and suppress the fruits of that search.

## II.   The District Court Clearly Erred in Denying Trial Counsel's Request for a *Franks* Hearing.

Mr. Cortez also appeals the district court's denial of a *Franks* hearing on two assertions made by Detective Ball in the Attleboro apartment search warrant affidavit: (1) law enforcement's purported ability to "identify" Mr. Cortez as the person setting fire to a car on a February 25, 2020 video; and (2) text messages purportedly found on Mr. Cortez's phone showing that Mr. Cortez "re-upped" or purchased fentanyl from Moses Cabral, a purported NOB member, on April 28, 2020.  These two incidents were relied upon by Detective Ball in his affidavit to show a connection between Mr. Cortez and the NOB-related RICO conspiracy that was under investigation.  [J.A. 52-54].  On February 28, 2022, trial counsel filed an affidavit in support of the request for a *Franks* hearing [G. App. 29], but the district court declined the request on clearly erroneous grounds.

### A.   Trial Counsel's Inclusion of the Government's Position in His *Franks* Affidavit Did Not "Invite" the District Court to Accept the Facts Embedded Therein Without Taking Evidence.

Regarding the identification issue, trial counsel's *Franks* affidavit stated that he had reviewed the video, was "unable to identify the person setting fire to the vehicle," had asked the AUSA to provide "information concerning the basis of the identification in the Affidavit," and was "informed" that Mr. Cortez "was identified from the clothing he was wearing."  [G. App. 29].  Detective Ball's affidavit did not say anything about Mr. Cortez being identified by his clothing,

and the AUSA's need to provide that additional information was a tacit acknowledgement that Mr. Cortez could **not** be identified simply "[b]ased on a review of video footage recovered by investigators," which is what Detective Ball stated under oath in the Attleboro apartment search warrant affidavit. [J.A. 52]. Courts have granted *Franks* hearings for far less. *See, e.g., United States v. Mendoza*, 2017 WL 3262111, *5, 9,10 (D. Nev. May 10, 2017) (*Franks* hearing required to determine whether affidavits "omitted or misrepresented information" with respect to "whether Defendant could be reasonably identified as the robber wearing the hockey mask in the surveillance video," so that court could "determine whether the statements . . . [were] false and, if so, whether the false statement was intentionally or recklessly made"); *see also United States v. Williams*, 2022 WL 2526192, *11-12 (D. Ariz. April 11, 2022) (defendant entitled to *Franks* hearing and suppression where detective did not provide video when seeking warrant and instead "merely proffered his own conclusion that the defendant could be seen in the video shooting based on an incomplete and misleading description of the quality of the video and what can be seen on the video").

Citing the "invited error" doctrine, the Opposition argues that including the AUSA's response about the basis of the identification in trial counsel's affidavit somehow "invited" the district court to accept that response as true fact without holding an evidentiary hearing. That is clearly wrong. The "invited error"

doctrine applies only when the court specifically does what the complaining party asked it to do. *See, e.g., United States v. Serrano-Delgado*, 29 F.4th 16, 29 (1st Cir. 2022) (counsel invited error where defense counsel proposed only a general inquiry into witness's Fifth Amendment assertion and "[t]he court then did precisely as Serrano's counsel proposed"); *United States v. Ruiz-Valle*, 68 F.4th 741, 744, 747 (1st Cir. 2023) (rejecting government's invited-error theory because, regardless of various statements defendant's counsel made, he ultimately argued for no supervised release and court ordered supervised release). Here, trial counsel was required to put the contested facts before the district court as part of his request that the district court hold an evidentiary hearing on the matter, *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978), and the court did not grant that request. [Add. 8, 12, 15]. The invited error doctrine thus does not apply.

The district court's finding that Mr. Cortez "did not dispute" the accuracy of that representation was also clearly in error. Mr. Cortez's memorandum specifically asserted that "[c]ounsel has reviewed the video produced in discovery and determined that it is **<u>impossible</u>** to identify the person(s) who set fire to the vehicle." [G. App. 35 (emphasis added); G. App. 48-49 (asserting that "Ball's statement that Cortez set fire to a motor vehicle associated with an NOB related murder is **<u>not supported</u>** by 'video footage'") (emphasis added)]. The government did not offer any basis for the AUSA's untested assertion such that <u>anyone</u> could

reasonably accept it as true. And, in any event, the crucial point was that affidavit had misleadingly asserted Mr. Cortez had been identified from "a review of video footage" when, as trial counsel averred, that was "impossible" to do.

In sum, it was clear error for the district court to simultaneously accept facts that were <u>not</u> included in Detective Ball's affidavit, but rather embedded in the AUSA's out-of-court statement made two years later, while simultaneously denying Mr. Cortez an evidentiary hearing on the issue. [Add. 4, 12, 15]. *See United States v. McMurtrey*, 704 F.3d 502, 505 (7th Cir. 2013) (district court erred by permitting government to offer evidence to explain discrepancies in affidavits, not permitting the defendant to cross-examine, and then "rel[ying] on the untested government evidence to find that the defendant had failed to make a showing sufficient to obtain a full *Franks* hearing").

B.    <u>The Text Messages Described by Detective Ball Did Not Exist.</u>

As for the purported April 28, 2020 text messages between Mr. Cortez and NOB-member Moses Cabral that Detective Ball described under oath, those simply do not exist – a fact that trial counsel also put before the district court. [G. App. 49 ("Ball's statement that Cortez 're-upped' for fentanyl based on alleged communications with NOB member Moses Cabral is, again, unsupported by any actual communications recovered from Defendant's cell phone."); G. App. 29 (trial counsel stating under oath that he "reviewed the text messages of Defendant's cell

phone;" was not "able to locate in said messages any communications between Moses Cabral and Defendant on April 28, 2020 that would form the basis of a conclusion that Defendant had 're-upped' for fentanyl on April 28, 2020;" and had requested that the government produce "any such messages;" but "no such messages have been provided")].

Like the district court, the Opposition cites *United States v. Moon*, 802 F.3d 135, 149 (1st Cir. 2015) to support the finding that trial counsel's affidavit was insufficient to warrant a *Franks* hearing. But *Moon* did not involve a situation where the evidence relied upon in the affidavit did not exist; rather, it involved a situation where the defendant denied that he participated in one of three controlled buys that allegedly took place, and offered equivocal evidence to corroborate his denial. *See Moon*, 802 F.3d at 149-50.

Here, Mr. Cortez's claim was not that he did not participate in the communications described by Detective Ball – his claim was that those communications did not exist. Moreover, that claim was highly reliable given that no such communications had been produced to him in the twenty months since his arrest despite the fact that they were required to be produced within 21 days of his arraignment. *See* Fed. R. Crim. P. 16(a)(1)(B)(i); L.R. 116.1(c)(1)(A). Mr. Cortez was arraigned on June 29, 2020, meaning that the messages should have been produced to trial counsel no later than July 20, 2020. *Id.* As of February 28, 2022,

defense counsel had reviewed the discovery provided to him, including Mr.

Cortez's text messages, had not been able to locate "any communications" that

supported Detective Ball's description, had requested those communications from

the government, and had not been provided with anything further. [G. App. 29].

That the government was obligated to produce those messages if they existed and

had not done so in nearly two years even after a specific request for them raises a

strong inference that the messages described by Detective Ball were made up.

*Accord McMurtrey*, 704 F.3d at 513.

*Moon* clearly does not speak to this circumstance, and the refusal to grant a

*Franks* hearing here – where the affidavit in support of the search warrant

described "evidence" that apparently did not exist – was clear error. *McMurtrey*,

704 F.3d at 513-14 (reversing and remanding for full *Franks* hearing where it was

"impossible to resolve the officers' factual contradictions as set forth in their

conflicting warrant applications without improperly relying on the bolstering

information that was supplied in the district court").[1]

---

[1] The other case cited by the government actually supports Mr. Cortez's argument. *See United States v. Southard*, 700 F.2d 1, 8-9 (1st Cir. 1983). In that case, when the defendants challenged whether the informants cited in the affidavit existed, the court took affirmative evidence on the issue. *Id.* Obviously that did not happen here.

C.   <u>Without the Purported Arson and Text Messages, There Was
Insufficient Probable Cause to Believe that Mr. Cortez Was a Member
of Any NOB-Related Conspiracy.</u>

Without the assertion that Mr. Cortez had "committed arson" for NOB in

February 2020 and had "re-upped" or purchased fentanyl from an NOB member in

April 2020, Detective Ball's affidavit was left with only three points of criminal

connection between Mr. Cortez and any NOB members: (1) a three-year-old arrest

for sex trafficking in Maine [J.A. 50-52], (2) a February 25, 2020 sighting of a car

parked outside of Mr. Cortez's home in Randolph that had been stolen by other

people (<u>not</u> Mr. Cortez) weeks before [J.A. 52], and (3) "messages in mid-March

2020 [in which] Cortez communicated with NOB member Anthony Depina about

obtaining marijuana."  [J.A. 54].

Those facts are insufficient to find that Mr. Cortez was participating in a

RICO conspiracy with NOB members.  The three-year-old arrest occurred in

another state and was stale, as Mr. Cortez was not associated with any similar

conduct (or arrested for any other NOB-connected crimes) in the intervening years

and there was no basis to believe that anything connected to that conduct would be

found at the Attleboro apartment.  *See United States v. Schaefer*, 87 F.3d 562, 568

(1st Cir. 1996).  The fact that a car that was previously stolen by NOB members

(but <u>not</u> Mr. Cortez) was seen once parked on Mr. Cortez's street suggests that

NOB members visited Mr. Cortez on that day, but not that he was working with

those people in a RICO conspiracy.  *See United States v. Lopes*, 578 F. Supp. 3d 158, 162 (D. Mass. 2021) (citations omitted) (finding in separate NOB-related prosecution that "associat[ing] with individuals who may have been involved in the shooting is not in and of itself incriminating") (citations omitted).  And one text conversation about obtaining marijuana hardly suggests participation in an ongoing RICO conspiracy.  If Mr. Cortez were selling and/or purchasing drugs on behalf of NOB, one would have expected to see at least some communications about that business relationship.  In fact, Detective Ball specifically averred in his May affidavit that "gang members and associates of violent street gangs, such as NOB, use their mobile phones to store gang-related materials, to communicate with other gang members, and to post gang-related materials on social media platforms." [J.A. 56]  The fact that Detective Ball had Mr. Cortez's phone and could easily see who Mr. Cortez was communicating with, when, and about what, and yet could only point to two exchanges concerning criminal conduct between Mr. Cortez and any purported NOB member –one that was three months old and involved only obtaining marijuana, and the other that did not in fact exist – gives rise to a strong inference that Mr. Cortez was <u>not</u> conspiring with NOB to commit crimes.[2]

---

[2] The Opposition's assertion that Mr. Cortez's cell phone "indicated . . . frequent drug transactions with NOB members Depina and Cabral" [Opposition at 30] is wrong.  Detective Ball's affidavit asserted that evidence obtained from the phone showed Mr. Cortez "engaging in frequent drug transactions," but <u>not</u> with people associated with NOB; he identified only two drug-related exchanges with

The Opposition also suggests that because the affidavit stated Mr. Cortez was under investigation for "various federal crimes, *including* RICO conspiracy" (emphasis added), the Court should read the Attleboro search warrant as having been directed toward obtaining evidence of Mr. Cortez's own drug transactions. [Opposition at 30-31]. That argument ignores the plan language of the affidavit, in which Detective Ball himself defined the "Target Offense" to be "RICO conspiracy in violation of 18 U.S.C. § 1962(d)" [J.A. 48] and sought only evidence of Mr. Cortez's association with NOB and nothing relating to drug offenses [J.A. 60; *see also id.* at 65-70]. It also ignores the fact that there was no probable cause to search for evidence of drug offenses at the Attleboro apartment. A warrant seeking evidence of drug trafficking in a suspect's home typically requires "generalized observations" from police about the types of evidence drug dealers tend to store in their homes <u>plus</u> "specific observations or facts connecting the drug dealing to the home" in order to "permit an inference of a nexus to a defendant's residence." *United States v. Roman*, 942 F.3d 43, 52 (1st Cir. 2019) (citation and internal quotation marks omitted). Here, Detective Ball's affidavit offered <u>nothing</u> to connect the Attleboro apartment to any alleged drug transactions. In contrast, in

---

purported NOB members: the one with Mr. Depina in mid-March described above, and the non-existent communication that purportedly took place with Mr. Cabral on April 28, 2020. [J.A. 54].

the May affidavit, Detective Ball represented that Mr. Cortez's drug transactions were taking place at "his home at 211 North Street in Randolph." [J.A. 86].

All of these facts underscore the absence of probable cause to believe that Mr. Cortez was participating in a RICO conspiracy with NOB. For these reasons, the Court should reverse the denial of the *Franks* hearing. At the very least, given that the district court did not reach the issue of whether probable cause existed without the challenged statements, the Court should remand to allow the district court to decide that issue in the first instance.

### III.    The Good Faith Exception Does Not Apply Here.

For these same reasons, the good faith exception does not apply – because Detective Ball's affidavit failed to provide a sufficiently trustworthy basis to establish probable cause, including (1) the brand new, lynchpin assertion that Mr. Cortez resided in Attleboro, which contradicted his own assertion from five weeks prior that Mr. Cortez lived in Randolph based on the pole camera placed outside of his home and police observations over the course of the investigation, and where he had a wealth of evidence on Mr. Cortez's movements from the recent phone search that he chose not to provide; and (2) because the critical facts on which he (and the district court) relied for probable cause were not reliable because of his materially misleading and false descriptions of the purported arson and purported "re-upping" of fentanyl. An objectively reasonable officer would have known that

these "numerous material omissions" and "false and misleading statements" were "inconsistent" with good faith. *Malley v. Briggs*, 475 U.S. 335, 346 n.9 (1985); *United States v. Vigeant*, 176 F.3d 565, 569 (1st Cir. 1999); *United States v. Fuccillo*, 808 F.2d 173, 178 (1st Cir. 1987) (no good faith where "agents were reckless in not including in the affidavit information which was known or easily accessible to them"); *see also Lopes*, 578 F. Supp. 3d at 164 (finding in separate NOB-related case that affidavit drafted by Detective Ball failed to establish probable cause because it was "based on speculation and weak (and largely unsupported) inferences").

## CONCLUSION

For the reasons set forth above and all of the reasons set forth in Mr. Cortez's opening brief, this Court should reverse the decision of the district court denying Mr. Cortez's motion to suppress and for a *Franks* hearing, and remand the case for further proceedings.

Respectfully submitted,

 _/s/ Sara Silva_____
Sara E. Silva (BBO No. 645293)
SILVA KETTLEWELL & PIGNATELLI
LLP
10 High Street, Suite 505
Boston, MA  02110
(617) 351-9093
sara.silva@skpboston.com

*Attorney for Defendant-Appellant*
May 24, 2024                    *Damian Cortez*


## CERTIFICATE OF COMPLIANCE

I hereby certify in accordance with Fed. R. App. P. 32(a)(5)(A) that the

foregoing brief was prepared in a 14-point proportionally spaced font, Times New

Roman.  The brief contains 4,673 words and is therefore in compliance with Fed.

R. App. P. 32(a)(7)(B)(ii).

 _/s/ Sara Silva_____
Sara E. Silva (BBO No. 645293)

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing brief was filed with the Clerk of the

United States Court of Appeals for the First Circuit via the CM/ECF system on

May 24, 2024, and that it was served electronically on counsel for the government:

Donald Lockhart, Esq.
Mark T. Quinlivan, Esq.
United States Attorney's Office
John Joseph Moakley Federal Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02110

*/s/ Sara Silva*
Sara E. Silva (BBO No. 645293)